IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2020 Session

## ABBIE JOSEPH HOWELL v. LAUREN ELIZABETH (BOND) HOWELL

**Appeal from the Chancery Court for Cannon County**
**No. 18-177    Royce Taylor, Judge**
_____

### No. M2019-01205-COA-R3-CV
_____

This appeal concerns a prenuptial agreement that protected each spouse's premarital property and waived the right to alimony. The couple signed the agreement on the day it was drafted, 11 days before their wedding. Seven years later, after the husband filed for divorce, the wife sought to set aside the agreement, asserting that she did not sign it knowledgeably and freely. The wife alleged that the husband took her to the attorney's office without notice or an opportunity to seek independent counsel. The trial court concluded that the agreement was valid because the couple lived together for six years before getting engaged, the wife knew the husband would not marry her without a prenuptial agreement, and the wife was not pressured or coerced into signing the agreement. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

David Brent Whelan, Murfreesboro, Tennessee, and Wesley Jesse Ladner, III, Nashville, Tennessee, for the appellant, Lauren Elizabeth (Bond) Howell.

Laurie Young, Murfreesboro, Tennessee, for the appellee, Abbie Joseph Howell.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

Abbie Joseph Howell ("Husband") and Lauren Elizabeth (Bond) Howell ("Wife") married on October 15, 2011, after having lived together for several years. At the time, Husband was a 54-year-old widower, single-father, and pharmacist. Wife, who had never married and had no children, was a 26-year-old pharmacy technician, substitute teacher, and college student majoring in pre-pharmacy. The couple had lived together for five or

six years in a house Husband owned. They did not jointly own real property; however, they jointly owned some personal property and had joint bank accounts. Wife knew for several years before the marriage that Husband would not remarry without a prenuptial agreement.

On October 4, 2011, the couple visited an attorney's office without an appointment to have the agreement drafted. Following a brief meeting with the attorney, the couple went to lunch. The couple returned about an hour later, at which time they reviewed the document with the attorney and signed it. They married 11 days later.

Seven years later, in 2018, both Husband and Wife filed complaints for divorce. During pretrial litigation, Husband asked for exclusive possession of the marital residence, and Wife asked for an award of alimony *pendente lite*. Husband then filed a motion to validate the prenuptial agreement. Wife opposed the motion, alleging that the agreement was invalid because she had not signed it freely and knowledgeably. The trial court held an evidentiary hearing on the motion in December 2018, during which it considered, *inter alia*, whether the prenuptial agreement was entered into freely, knowledgeably, and in good faith, and whether an award of alimony was precluded by the agreement's terms.

Three witnesses testified at the hearing: Husband, Wife, and Husband's sister, Mary Jean Cook. Husband testified that he and Wife signed the agreement and initialed each page after discussing each provision with the attorney. He also testified that he and Wife disclosed their assets to each other in documents that were attached to the agreement. Husband insisted that Wife understood that she would have to sign a prenuptial agreement before the marriage because the parties had discussed it several times. Further, Husband testified that Wife knew Husband paid for his house with life insurance proceeds after his first wife died and wanted to ensure the property went to his children. Husband also stated that he would have been happy to continue cohabitating as an unmarried couple instead of getting married.

Wife conceded that she knew Husband wanted a prenuptial agreement, but she testified that the couple never discussed the terms of the agreement. She said Husband took her to see an attorney without telling her that she could or should obtain independent counsel. Wife further testified that she did not understand the agreement "at all," but she signed it because she trusted Husband, explaining that he "always made the decisions." She also admitted that she did not tell the attorney she did not understand the agreement, she did not request an attorney, and she did not request financial assistance to retain an attorney. Wife also testified that she was suffering from pancreatitis symptoms when she signed the agreement and spent four of the next 11 days in the hospital before proceeding with the wedding as planned. Husband stated that he did not recall Wife being sick on the day they signed the agreement.

Husband's sister, Mary Jean Cook, testified that she and Wife talked about the benefits of prenuptial agreements on several occasions before October 2011. According to

Ms. Cook, Wife understood that a prenuptial agreement would protect each spouse's premarital assets, including Wife's inheritance from her father.[1]

At the conclusion of the hearing, the court announced that it would deny Wife's motion to invalidate the agreement. In a subsequent written order, the court made several findings of fact, including the following:

1.  [T]he parties resided together prior to marriage from 2006 until 2011 when they married. The parties were obviously aware of the other[']s assets prior to marriage.

2.  . . . [Wife] was aware that [Husband] wanted to protect his assets.

3.  . . . [Wife] was aware that Husband required the parties [to enter] into a prenuptial agreement prior to their nuptials.

4.  Ms. Mary Jean Cook . . . [testified] that she had discussions with [] Wife about a prenuptial agreement prior to [] Wife's execution of the same.

5.  . . . [N]either of the parties has any greater legal background than the other, and therefore[] no legal advantage over the other.

6.  If [] Wife wanted to seek independent counsel, [] Wife had ample time in which to accomplished the same and should have stated the same to [] Husband and/or the attorney that drafted the executed prenuptial agreement. . . . Wife was aware that she was executing a prenuptial agreement which included but was not limited to the separation of their assets.

7.  Based upon [] Husband's testimony, if the parties did not marry, nothing would change regarding their relationship, and in fact, [] Husband was content to cohabitate . . . and not marry[,] i.e., [] Husband was not going to force [] Wife out of his home, or stop supporting [] Wife if the parties did not marry; the Wife entered into the prenuptial agreement freely and without pressure and/or coercion.

Based on these findings, the court ruled that the prenuptial agreement was valid and binding.

---

[1] Wife inherited an undisclosed amount of money from her father in 2008.

The divorce proceeded to a final hearing in May 2019, after which the trial court entered a final order. In accord with the prenuptial agreement, the court awarded Husband the marital residence and denied Wife's request for alimony. This appeal followed.

Although Wife presents six issues on appeal, her general contention is that the trial court erred in finding that Husband satisfied his burden of proving that Wife entered into the prenuptial agreement "freely, knowledgeably, and in good faith without duress or undue influence." She also contends the trial court erred by placing the burden of proof on her to invalidate the prenuptial agreement.

## STANDARD OF REVIEW

In a nonjury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). The evidence preponderates otherwise where the evidence "support[s] another finding of fact with greater convincing effect." *Boote v. Shivers*, 198 S.W.3d 732, 741 (Tenn. Ct. App. 2005). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

## ANALYSIS

Tennessee Code Annotated § 36-3-501 requires courts to enforce agreements between prospective spouses concerning their separate, premarital property if the court finds that the spouses entered into the agreement "freely, knowledgeably and in good faith and without exertion of duress or undue influence." *See Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). The same applies to agreements waiving or limiting a spouse's right to alimony. *Cary v. Cary*, 937 S.W.2d 777, 782 (Tenn. 1996). "Whether each element is established 'is a question of fact to be determined from the totality of the circumstances surrounding the negotiation and execution of the . . . agreement.'" *Walker v. Walker*, No. M2018-01140-COA-R9-CV, 2020 WL 507645, at *4 (Tenn. Ct. App. Jan. 31, 2020) (quoting *Boote*, 198 S.W.3d at 741), *appeal denied* (July 20, 2020). As Wife correctly asserts, "[t]he burden of proof to establish these elements rests with the party seeking to enforce the antenuptial agreement," not on the one challenging its validity. *Boote*, 198 S.W.3d at 741 (citing *Randolph*, 937 S.W.2d at 821).

Our courts have identified several factors relevant to whether a spouse had "independent knowledge of the full nature, extent, and value of the proponent spouse's holdings," including but not limited to, "[1] the parties' respective sophistication and experience in business affairs, [2] the duration of the relationship prior to the execution of the agreement, [3] the time of the signing of the agreement in relation to the time of the wedding, and [4] the parties' representation by, or opportunity to consult with, independent counsel." *Randolph*, 937 S.W.2d at 822.

Therefore, we find it appropriate to examine these relevant factors to determine whether Husband proved, by a preponderance of the evidence, that the agreement was "entered into freely, knowledgeably, and in good faith and without the exertion of duress or undue influence." Tenn. Code Ann. § 36-3-501.

### I. SOPHISTICATION AND EXPERIENCE IN BUSINESS AFFAIRS

Wife contends the trial court erred by conflating the parties' "legal background" with their "sophistication and experience in business affairs" and by finding that neither party had a "legal advantage over the other." Wife also contends that the court ignored several other facts, such as the disparity in age, education, business experience, and financial acumen at the time of the marriage.

It is undisputed that Wife was 26 years old and in college when she signed the agreement, while Husband was significantly older and had worked as a retail pharmacist for 28 years; thus, Husband had more sophistication and experience in business affairs. The evidence in the record, however, does not preponderate in favor of a finding that Husband's age and business experience placed him in an advantageous position. To the contrary, Wife was very bright; she graduated from high school with honors, had worked as a pharmacy technician and substitute teacher, and was pursuing a pharmacy degree at the time she signed the agreement. Moreover, neither sophistication nor experience in business affairs was needed to understand the terms of the agreement because they were very straight forward. Simply put, the agreement clearly and unambiguously stated what Husband owned would remain his separate property, what Wife owned would remain her property, and neither would be entitled to alimony:

> 2. *Release of Assets Presently Owned by the Other.* . . . In the event of the dissolution of this marriage by divorce or otherwise, the parties agree that all property now belonging to the other party on or before the date of this Agreement or on or before the date of their marriage including any increase in the value of said property during the marriage or any inheritance or gifts received by either party shall be the sole and separate property of said party free from all marital rights or claims of the other of whatever kind in nature, except as otherwise provided in this Agreement.

> .   .   .

> 9. *Alimony.* The parties agree that neither party shall be obligated to pay the other alimony, spousal support or any other type of separate maintenance in the event of a legal separation or divorce.

Although the trial court's ruling referenced the parties' "legal background" instead of their "sophistication and experience in business affairs," the evidence does not

preponderate against its finding that neither party had an advantage—legal or otherwise—over the other in understanding the agreement's plain meaning.

## II. DURATION OF THE RELATIONSHIP

The trial court found that Wife was "obviously aware of the [Husband's] assets prior to marriage" because of the length of their relationship. The evidence does not preponderate against, and Wife does not dispute, this finding.

The length of the relationship prior to executing a prenuptial agreement may be relevant to determining the validity of a spouse's assent, because the longer the relationship, the longer "the opportunity to independently gain a full and fair understanding" of the other spouse's assets. *Sattler v. Sattler*, No. M2007-02319-COA-R3-CV, 2008 WL 4613589, at *5 (Tenn. Ct. App. Oct. 13, 2008) (finding two-month relationship did not give husband opportunity to gain independent knowledge of wife's assets). Here, the couple lived together for six years prior to marrying. Significantly, during this lengthy period of time, they maintained joint bank accounts and shared responsibility for paying the bills. Wife knew Husband's annual income and that he was an employee of the pharmacy. Moreover, Wife knew that Husband used the death benefits from his former wife's life insurance to purchase the house the couple lived in. It is also significant that a list of Husband's separate property was attached to the prenuptial agreement.

## III. TIMING/DURESS

Wife contends that she was under duress when she signed the agreement because it was presented to her 11 days before the wedding, she knew Husband would not go forward with the marriage if she did not sign the agreement, she was financially dependent on Husband, and she was experiencing pancreatitis symptoms that day. The trial court found that "Wife entered into the prenuptial agreement freely and without pressure and/or coercion" because "Husband was not going to force [her] out of his home, or stop supporting [her] if the parties did not marry."

As stated above, to be enforced, the parties must enter into a prenuptial agreement "without exertion of duress." Tenn. Code Ann. § 36-3-501. This court has recognized that "[d]uress consists of unlawful restraint, intimidation, or compulsion that is so severe that it overcomes the mind or will of ordinary persons." *Boote*, 198 S.W.3d at 745 (citing *Johnson v. Ford*, 245 S.W. 531, 538 (Tenn. 1922); *Dockery v. Estate of Massey*, 958 S.W.2d 346, 348 (Tenn. Ct. App. 1997)). That said, circumstantial evidence of pressure may still be relevant to the totality-of-the-circumstances analysis.

Accordingly, in *Ellis v. Ellis*, we concluded that the wife did not sign a prenuptial agreement "freely" when she did not know that the husband wanted a prenuptial agreement until three days before the wedding. No. E2013-02408-COA-R9-CV, 2014 WL 6662466, at *1, 11 (Tenn. Ct. App. Nov. 25, 2014). When presenting the agreement, the husband

also showed the wife her wedding ring and explained "that she could not have the ring without signing the agreement." *Id*. at *1. Moreover, the wife had recently moved in with the husband "after discovering she was three months pregnant" and after quitting her job at the husband's insistence. *Id*. at *11. Although we disagreed that the timing and circumstances met the "stringent" definition of duress, we found the evidence supported a finding that the wife had not "freely" entered the agreement. *Id*.

The circumstances in this case are not comparable to those in *Ellis*. Here, Wife lived with Husband for five years before they became engaged. She was educated, employable, had no children, and was not pregnant. Further, Wife knew for several years that Husband would not marry without a prenuptial agreement in place. Moreover, there is no evidence that Husband insisted Wife sign the prenuptial agreement on the day it was drafted. Accordingly, the evidence does not preponderate against the trial court's finding that Wife entered into the agreement "freely and without pressure and/or coercion."

## IV. INDEPENDENT ADVICE OF COUNSEL

Wife contends that she had no reasonable opportunity to obtain independent counsel. The trial court concluded to the contrary, reasoning that, if Wife wanted independent counsel, she "had ample time in which to accomplish the same and should have stated the same to the Husband and/or the attorney that drafted the executed prenuptial agreement." Moreover, as the trial court noted in its oral findings from the bench on the day of the hearing, Wife "had years" to obtain an attorney and "certainly had the opportunity over [the] five or six years that they had discussed this to make some effort to find out what was involved."

The temporal proximity of the signing to the wedding can be significant because it may show that a party did not have an "opportunity to personally study the agreement or to seek advice." *Randolph*, 937 S.W.2d at 822. Thus, our courts have found this factor weighed against enforcement in cases where the agreement was presented and signed just days before the wedding. *See id*. at 817 (one day); *Grubb v. Grubb*, No. E2016-01851-COA-R3-CV, 2017 WL 2492085, at *12 (Tenn. Ct. App. June 9, 2017) (two days); *Ellis*, 2014 WL 6662466, at *1 (three days). In *Grubb v. Grubb*, we opined that, "[w]hile it is not a direct linear relationship, the more sophisticated the spouse is, the less time he or she may well need in order to be able to enter into the agreement freely, knowledgeable, and in good faith without duress or undue influence." 2017 WL 2492085, at *12.

Whether a party to a prenuptial agreement was represented by counsel or had the opportunity to consult with independent counsel is one of several factors to consider in determining whether the agreement was entered into voluntarily and knowledgeably. *See Randolph*, 937 S.W.2d at 822. "Though representation by independent counsel may be the best evidence that a party has entered into an antenuptial agreement voluntarily and knowledgeably, no state makes consultation with independent counsel an absolute requirement for validity." *Id*. (citation omitted).

It is undisputed that Wife was not represented by independent counsel; however, the attorney who drafted the agreement explained each term to both parties prior to their signing the agreement. Moreover, Wife makes no allegation that the attorney misrepresented the terms of the agreement; she merely alleges that she did not understand it "at all." The terms of the agreement, however, were clear and unambiguous, and Wife was more than sufficiently educated to understand the full import of their meaning. As the trial court noted, Wife had known for years that Husband was going to require a prenuptial agreement to protect his assets or there would be no wedding, and the couple had been engaged for a year prior to going to the attorney's office to execute the agreement. Moreover, as we noted earlier, the terms of the agreement were clear and unambiguous. Thus, as the trial court correctly found, Wife had ample time and a sufficient opportunity to seek independent counsel, yet she chose not to do so.

Having considered the totality of the circumstances leading up to and surrounding the execution of the prenuptial agreement, we agree with the trial court's conclusion that Wife freely and knowledgeably entered into the prenuptial agreement without duress or undue influence; therefore, we affirm the judgment of the trial court.

## IN CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court, and this matter is remanded with costs of appeal assessed against Lauren Howell.

_____
FRANK G. CLEMENT JR., P.J., M.S.